Gulick v. Gulick.

MARY L. GULICK v. PETER H. GULICK.

A promise to marry made by a person physically and incurably impotent is contrary to the statutory policy of the state, and its breach will not constitute a cause of action.

On rule to show cause why a new trial should not be granted, the issue having been tried in the county of Middlesex.

Argued at November Term, 1878, before BEASLEY, CHIEF JUSTICE, and Justices WOODHULL and REED.

For the rule, *W. Y. Johnson* and *J. P. Stockton*, Attorney-General.

*Contra, C. H. Winfield.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE.   This is a suit for a breach of promise of marriage.   At the time of the contract the plaintiff was thirty-nine, and the defendant seventy-nine years of age. It appeared from the proofs at the trial that the defendant was sexually impotent, owing to a surgical operation, and that such infirmity was known to the plaintiff.   The question is whether an actionable promise could exist in view of such a state of facts.

This inquiry I think, should receive a negative response. The undertaking which is sued on is plainly against the policy of the law of the state.   The statute, (*Rev., p.* 315, § 4,) says that "divorces from the bond of matrimony may be decreed in case the parties, or either of them, were, at the time of such marriage, physically and incurably impotent; and all marriages in such case shall be invalid from the beginning, and absolutely void."   The effect of this act is to put it in the power of the Chancellor to declare any marriage void on account of incurable impotency in either or both of the parties.

It is argued that this clause just quoted does not have such wide effect, but that it is applicable only when there is a fraud- ulent concealment of such matrimonial impediment.   But the act, construed by legal rules, will not yield such a meaning. There are three fatal objections to this suggested interpretation. First, it renders the entire section nugatory, as, if such be its office, it added nothing to the efficiency of the law as it existed at the time of the enactment of such provision, for at that period it had already been definitively settled by the opinion of the Court of Errors in the case of *Carris* v. *Carris*, 9 *C. E. Green* 516, that a fraudulent concealment of the kind in ques- tion constituted a ground on which the marriage might be dissolved.   Second, such a construction is inconsistent with the provision itself, which makes the marriage voidable for the reason of impotency in both parties, and in such a case it is impossible to place the proceeding for divorce on the allega- tion of deception, as an impotent party could not rationally allege that he suffered from a fraud practised by the non- disclosure of a corresponding defect in the other party.   And in the third place, as the statute, in explicit terms, says that impotency in one or both of the parties shall constitute the ground of divorce, the court, in interpreting it, cannot say that concealment as well as impotency is necessary.   Such a reading would be founded on the implication that the essential ground of divorce is not contained in the statute, because if concealment of the impotency must exist in order to put the act in motion, then fraud would be, most certainly, the sub- stance, and the physical defect but the incidental characteristic of the proceeding for the dissolution of the marriage.   It is very obvious, I think, that such a material modification of the verbal expression of this section could be justified only on the ground that its letter would lead to a result so outrageously inconsistent with common reason as to demonstrate that such result could not have been within the legislative design.   But nothing of the kind can be pretended in this instance.   It is true that the act, read by its letter, establishes a policy about which different views may be entertained.   To some minds

the system introduced by it may appear unduly restrictive of the right to marry, while to other minds this circumscription of such right may seem wise, as, on the whole, such relationships have a tendency that is not consistent with morality or the well-being of society. But for present purposes it is enough to say that the policy of the act, receiving it in its literal sense, is not absurd, and this being so, such policy is not subject to judicial amendment or revision.

Taking this view of the statute, it is not possible to sanction the present action. The defendant could not bind himself to enter into a marriage which, by force of its own inherent conditions, might be declared by the Chancellor to be void *ab initio.* Having made such a promise, he had a *locus penitentiæ,* and could repudiate it without subjecting himself to a liability to be sued. The plaintiff should have been non-suited at the trial, and on this account the rule must be made absolute.